In the Matter of the Claim of Albin Lyson for Compensation from the North Dakota Workmen's Compensation Fund.

Albin LYSON, Plaintiff and Respondent,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Defendant and Appellant.

No. 8032.

Supreme Court of North Dakota.

July 10, 1964.

Rehearing Denied Aug. 3, 1964.

Leslie R. Burgum, Atty. Gen., Lawrence E. Watson, Myron E. Bothun, Asst. Attys. Gen., Bismarck, for defendant and appellant.

Joseph P. Stevens, Minot, for plaintiff and respondent.

BURKE, Judge.

This appeal is from a judgment of the district court reversing a decision of the North Dakota Workmen's Compensation Bureau, denying the claimant, who is the respondent herein, an award of compensation for permanent total disability.

The claimant suffered a back injury in the course of his employment on December 14, 1948. He filed a claim for compensation which was allowed by the Compensation Bureau. The first award was for 19 days compensation for temporary total disability from December 15, 1948 to January 3, 1949. His physician's report stated:

"The diagnosis was intervertebral disc syndrome, acute, severe, without neurological changes. Patient was advised that he might return to work wearing his corset but not to do any heavy lifting. The likelihood of recurrence of these symptoms is very high."

Although claimant did not return to work until November 11, 1949 he was allowed no compensation payments from January 3 to November 11. He worked for a livestock dealer feeding cattle from November 11, 1949 until February 10, 1950, when he was forced to quit because of his back ailment. His employer reported:

"He missed quite a few days work while in our employ as you can see from the report, the reason being, according to my information that he was ill and also know that he complained about his back different times at the yard. He was always willing to work at the yard."

Thereafter, he was allowed compensation, by two separate awards, from February 9, 1950 to May 31, 1950. He was employed by the City of Minot from June 1950 to August 31, 1950. From November 1, 1950 until May 21, 1951 he received compensation. In the spring of 1951, claimant went to Seattle, Washington, where he worked from May 21 to July 30. Thereafter, he was alternately employed and received compensation until October 3, 1952.

In October 1952, claimant underwent surgery and a ruptured intervertebral disc was removed from the spine. At that time his physician reported: "It is apparent that the injury caused the rupture of the intervertebral disc which Dr. Stafford removed." Subsequent to the operation the Compensation Bureau allowed the claimant compensation until June 6, 1953.

The record shows that claimant was employed for 42 days in 1953, for 92 days in 1954, for 61 days in 1955, for 6 months in 1956, and 7 months in 1957. During this period claimant received no compensation. He testified that he tried to find work which he could do but he had to quit every job because of back pain.

In August 1957, claimant was again placed on compensation. In April 1958, he underwent surgery for a second time. His surgeon reported:

"I operated upon him * * * doing a laminectomy on the right fourth and fifth lumbar spaces. No protruded disc was found but heavy scarring was present about the nerve roots in both of these spaces."

From the time of this operation he received compensation continuously until June 7, 1961, except for the periods from March 1 to June 30, 1959, and from August 1, 1959 to June 23, 1960.

In December 1960, the Compensation Bureau arranged to send the claimant to the University of Minnesota Hospital for diagnosis and treatment. The diagnosis was instability of the lumbar spine. It was suggested that claimant be placed in a cast for a period of four weeks to determine if immobilizing the lumbrosacral region would give relief from pain. If the cast gave relief from pain, it would be considered that a surgical spinal fusion was indicated. The cast was applied in accordance with this suggestion and claimant returned to Minot. On January 7, 1961, claimant entered a hospital in Minot, and it was necessary to remove the cast to relieve what was described as a severe pain in his left chest.

Thereafter the Compensation Bureau proposed to allow the claimant an award of fifty percent permanent disability or an additional twenty percent to the thirty percent permanent partial which had already been allowed. The claimant protested the proposed award and petitioned for an award of permanent total disability. He also asked for an award of temporary total disability from December 14, 1948, until November 1, 1949. Pending a hearing on this petition the Compensation Bureau made an award of fifty percent permanent disability in accordance with its prior proposal. After a hearing upon claimant's protest and petition, the Compensation Bureau entered its order denying claimant further relief upon the ground that "it does not appear to be substantiated by medical reports or otherwise that claimant is totally and permanently disabled."

The claimant appealed from this decision to the district court. Upon that appeal judgment was entered in favor of the claimant and against the Compensation Bureau.

This judgment decreed that claimant was entitled to compensation for all the periods of unemployment between December 14, 1948 and June 30, 1961, for which he had not been previously compensated; that he was entitled to an award of $257.00 because of the failure of the Compensation Bureau to consider one dependent child; that he was entitled to fifty percent additional compensation for 38 weeks in which he had been paid less than the statutory rate, and that he was entitled to an award of permanent total disability. The judgment also awarded interest on the sums found unpaid from the dates upon which they were considered to be due and attorney fees for claimant's attorney in the sum of $1,500.00. From this judgment the Compensation Bureau has appealed.

Appellant specifies; (1) the evidence is insufficient to support the trial court's finding that the claimant was totally disabled; (2) that the trial court erred in allowing interest upon the sums found to be due claimant for compensation; (3) that the trial court erred in allowing claimant benefits for dependent children; and (4) that the trial court erred in allowing benefits to claimant's wife as a dependent spouse.

In its brief the appellant does not argue that claimant is not totally disabled. It argues that the evidence does not establish any causal connection between his injury and his disability.

Since the Compensation Bureau found that claimant was injured in the course of his employment and as a result of such injury suffered a fifty percent permanent partial disability, its specification as to the insufficiency of the evidence to sustain a causal connection between claimant's injury and his disability must relate solely to that portion of claimant's disability which is in excess of fifty percent.

In appellant's brief, the argument is summarized as follows:

"The record is totally lacking in any evidence that would establish the fact that claimant's disability is causally related to his injury of December 14, 1948, other than claimant's own testimony. The other medical reports generally relate the subjective findings of the various physicians. They do not relate any objective findings as a result of their examinations that the claimant's disability is related to his injury of 1948. The claimant's testimony has not been corroborated by any other witnesses and is contrary to the reports submitted to the Bureau by Drs. Christoferson and Arneson. In weighing the claimant's testimony consideration must be given to the findings of Drs. Christoferson and Arneson that the claimant exhibits neuroses and functional overlays as to his disability."

In its essence this argument contends that the Compensation Bureau is liable for compensation to a claimant, injured in the course of his employment, only to the extent that his disability may be demonstrated by objective physical findings, and that disability which is the result of aggravation by neurosis or "functional overlay" is not compensable.

▐ With this view we are not in sympathy. Neuroses, emotional disturbances, and mental illnesses can be as disabling as the most serious of physical injuries, even though they cannot be established by objective diagnostic procedures. The Workmen's Compensation Statute clearly contemplates that claimants shall receive compensation for all disability which is caused by an injury received in the course of employment. See Sections 65–05–09, 65–05–10, 65–05–12 NDCC. We have no doubt but that disabilities which are the result of neurosis caused by injuries are compensable. 99 C.J.S. Workmen's Compensation § 173 p. 595; 58 Am.Jur. (Workmen's Compensation Sec. 250) 752; Welchlin v.

Fairmont Ry. Motors, 180 Minn. 411; 230 N.W. 897; Hunnewell's Case, 220 Mass. 351, 107 N.E. 934; Carter Oil Co. v. Gibson, 34 Wyo. 53, 241 P. 219.

In the Carter Oil Company case, supra, the claimant suffered an injury which required the amputation of a finger. Subsequent to the operation, claimant continued to suffer pain and was disabled from working. Although, there was no demonstrable physical condition which would account for claimant's continued pain, he was allowed permanent total disability because of neurosis.

The record in the instant case shows that during the ten years subsequent to his injury claimant was intermittently employed and unemployed. He testified that in all instances he had to quit work because of pain in his back or that he was discharged because of absences from work which were due to pain. In 1952 he had a ruptured disc removed from his spine. His physician reported that this ruptured disc was caused by his injury. In 1953, an examining neurologist reported:

"It is my impression that this patient probably has moderate residuals from the removal of a protruded intervertebral disc, but in addition, he exhibits a rather marked compensation neurosis with many hysterical findings."

A second operation was performed in 1958. His surgeon reported that he found heavy scarring about the nerve roots. Presumably this scarring was a residual of the first operation.

In the whole record there is no proof that claimant is malingering or that he does not suffer the pain of which he complains. While the physicians have not been able to account for the pain upon the basis of concrete physical defects, they have accounted for it on the basis of neurosis, hysteria and functional overlay.

■ It appears that the causal chain between the injury and his neurosis is un- broken. An injury caused a ruptured intervertebral disc in 1948. In 1952, this disc was removed. During this period there was no need to relate his pain to neurosis or hysteria. In 1958, his condition was such that his physicians considered that a second operation on the spine was necessary. Successive operative traumata upon a nerve center such as the spinal column could well have produced a neurosis, and in the absence of any other explanation in the record, we must find that the neurosis and the resulting disability was caused by claimant's injury and the subsequent treatment thereof. Claimant has had only an eighth grade education. He is not qualified for employment at other than manual labor. Time and time again, he has tried unsuccessfully to keep a job. He has undergone two serious operations in attempts to fit him to return to work. These operations did not accomplish their intended purpose and plaintiff has been unemployed since August 1957. We are agreed that the record establishes that plaintiff is unable, because of his disability to engage regularly in the only kind of work he is qualified to do. Our statute does not define total disability. In Corpus Juris Secundum, it is stated:

"The words 'total disability' as used in the workmen's compensation acts should be taken in their plain or ordinary and usual sense. In order to determine total disability under the statutes both the type of work being done at the time of the accident and the nature and extent of the injury must be considered; and regard must be had to age, experience, training, and capabilities of the employee.

"Generally, an employee is totally incapacitated and entitled to the compensation provided therefor where by reason of the injury he is so disqualified from performing the usual tasks of a workman that he is unable to procure and retain employment, * * *." 99 C.J.S. Workmen's Compensation, § 299 p. 1055. ·

In Wilson v. Brown-McDonald Co., 134 Neb. 211, 278 N.W. 254, 116 A.L.R. 702, it was held that a workman unable, solely because of injury, to perform or obtain any substantial amount of labor in his particular line of work, or in any other for which he would be fitted is totally disabled within the meaning of the workmen's compensation act. See also, Byouk v. Industrial Commission of Colorado, 106 Colo. 430, 105 P.2d 1087; Liebmann's Independent Ice Co. v. Ganther, 193 Okl. 218, 142 P.2d 605; Rapp v. Hale, 170 Neb. 620, 103 N.W.2d 851.

■ We are satisfied that the definition of total disability as above stated is the proper one in compensation cases and we therefore agree with the trial judge's finding that claimant has been totally and permanently disabled by an injury received by him in the course of his employment.

With respect to the second specification of error, to wit: that it was error for the trial court to allow interest upon unpaid past due compensation payments, it is sufficient to say that respondent confesses error upon this allowance. The interest will, therefore, be disallowed.

■ Appellant's third and fourth specifications of error were founded upon the contention that Section 65–05–09 NDCC which was last reenacted in 1953, was not retroactive, and therefore did not control an award of compensation for disability due to an injury received in 1948. Upon the argument of the case and in a supplemental brief counsel has receded from this position. He asserts, however, that no compensation may be awarded for claimant's wife as a dependent spouse, for the reason, that claimant's wife was working. The only testimony in the record concerning this issue is a statement by claimant that his wife was working in 1962. Without deciding whether a wife who was employed and contributing to the support of the family at the time of her husband's injury is a dependent spouse, we are clear that a wife who is actually dependent at the time her husband suffers a disabling injury does not lose her status as a dependent by finding employment to replace the loss her husband's disability has caused.

The judgment of the district court is therefore affirmed in all respects except for the allowance of interest and it is ordered that judgment on remittitur be entered accordingly.

MORRIS, C. J., and TEIGEN, J., concur.

STRUTZ and ERICKSTAD, JJ., did not participate.