Patricia AUXIER, Appellee,

v.

**WOODWARD STATE
HOSPITAL–SCHOOL,**
Employer,

and

**State of Iowa, Appellants.**

No. 60108.

Supreme Court of Iowa.

May 17, 1978.

Rehearing Denied June 23, 1978.

Richard C. Turner, Atty. Gen., and Lee M. Jackwig, Asst. Atty. Gen., for appellants.

Harry W. Dahl, Des Moines, for appellee.

Fred D. Huebner, Des Moines, amicus curiae.

HARRIS, Justice.

A review-reopening decision by the deputy industrial commissioner was reversed on appeal to the trial court. Woodward State Hospital (the hospital) and the State of Iowa, as claimant's employer, have appealed the trial court's determination to us. We affirm in part and reverse in part.

Patricia Auxier (claimant) was employed by the hospital at Woodward. In February 1971 claimant, while at home, broke her leg in an accident which was unrelated to her employment. As soon as the cast was taken off she returned to work where, on May 26, 1971, she was tripped by one of the patients in the hospital. In her fall she reinjured her right ankle.

On June 4, 1971 the hospital filed a report of the injury. A memorandum of agreement was made and approved by the commission on June 7, 1971. Pursuant to that agreement claimant was paid $47.81 for 113 weeks.

Payments were abruptly stopped August 2, 1973. The only notice claimant received of termination of the payments was a letter to her attorney enclosing a warrant for two weeks compensation from July 19, 1973 to August 1, 1973:

" * * * With this State warrant we are discontinuing further payments to your client, for the reason that the Iowa City report does not indicate that your client has very much permanent partial disability. Also, medical reports indicate that your client has other conditions not related to

her work injury. With this warrant we will have paid your client a total of 113 weeks of workmen's compensation."

Not surprisingly the parties are in disagreement as to claimant's exact physical condition at the time, and are in sharp disagreement as to what infirmities derived from claimant's work-related injury.

On September 14, 1973 claimant filed her application for review-reopening under § 86.34, The Code. She claimed her worker's compensation benefits had been terminated without her consent, while she was still disabled, and in contravention of her rights to due process of law. The deputy commissioner filed his decision on the review-reopening on November 20, 1974. He found: (1) claimant is five feet nine inches tall and weighs 220 pounds; (2) claimant suffered her injury after being tripped by a patient at Woodward; (3) under the memorandum of agreement claimant was paid 113 weeks of compensation at $47.81 per week; (4) upon the basis of various medical reports the commissioner concluded claimant suffered many other ailments to her leg, back, nerve and blood systems, which were not work related; (5) claimant's permanent partial disability was 15 percent of the total body; (6) compensation should have been paid to claimant for 75 weeks at $56 per week (permanent partial disability) and 45 weeks at $57.39 per week (healing period). He also allowed for payment of interest and a portion of the medical expenses claimed.

Claimant appealed the industrial commissioner's decision to the trial court which ruled the commissioner erred as a matter of law in terminating the payments without a hearing. The trial court accordingly ordered payment of compensation to claimant for the period from termination, August 1, 1973, to November 20, 1974, the date of the review-reopening decision. The trial court also ordered a "running award" paid for 300 weeks or until it was established claimant's disability is either permanent or total, whichever period is less. The trial court separately allowed 21 other medical bills.

I. The first issue is the hospital's challenge to the trial court's holding the claimant was entitled to a pretermination hearing before disability benefits could be stopped. Because there was no such hearing the trial court ordered benefits paid until the date of the commissioner's decision. There is no statutory requirement for such a hearing so the dispute is whether one is demanded by the due process requirements of Amendment 14 to the United States Constitution and Art. I, § 9, of the Iowa Constitution.

Claimant, in support of her due process claim, relies heavily on *Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg* the majority held procedural due process required that, before terminating welfare benefits, the recipient must be accorded an evidentiary hearing. The court set up the following six requirements: (1) "timely and adequate notice detailing the reasons for a proposed termination"; (2) "an effective opportunity [for the recipient] to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally"; (3) retained counsel, if desired; (4) an impartial decision-maker; (5) a decision resting "solely on the legal rules and evidence adduced at the hearing"; (6) a statement of reasons for the decision and the evidence relied on. 397 U.S. at 266–271, 90 S.Ct. at 1019–1022, 25 L.Ed.2d at 298–301.

The hospital, in resisting the claim, points to *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Mathews* the question was whether due process requires that, prior to termination of social security disability benefits, the recipient be accorded an opportunity for an evidentiary hearing. In answering the question the court used a balancing test which weighed three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest including the function involved, and the fiscal and administrative burdens and any additional burdens a new procedure would

entail. 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33. All three factors were variable. In balancing them the majority in *Mathews* found no violation of due process for want of a pretermination hearing under the facts presented.

Under the social security act, 42 U.S.C. § 423 Eldridge, the claimant in *Mathews,* received a questionnaire from a state agency charged with monitoring his condition. He answered the questionnaire, claiming his condition had not improved and referred to medical sources and his treating physicians. The state agency then obtained reports from the physicians and considered them. Thereafter it informed Eldridge by letter it had made a tentative determination his disability had ceased in May of 1972. The letter contained a statement of reasons for the proposed termination of benefits and advised Eldridge he might request reasonable time in which to obtain and submit additional information pertaining to his condition. Although he challenged the description of his condition, Eldridge chose not to submit further evidence.

The agency made a final decision that Eldridge had ceased to be disabled in May of 1972. This determination was accepted by the social security administration which notified Eldridge in July his benefits would terminate after that month. It also advised him he had a right to seek reconsideration by the state agency of the initial determination within six months. Eldridge made no such request but brought suit on the claim he had a constitutional right for a pretermination hearing as specified in *Goldberg.* His claim was denied by the majority. See also *Sandoval v. Industrial Commission,* 144 Ariz. 132, 559 P.2d 688, cert. denied 432 U.S. 906, 97 S.Ct. 2951, 53 L.Ed.2d 1078 (1977).

■ The test of whether due process of law has been violated is whether the challenged practice or rule "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed.2d 674, 677 (1934), overruled on other grounds *Malloy v. Hogan,* 378 U.S. 1,

84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); 90 A.L.R. 575. See 1 Antieau, Modern Constitutional Law, § 5:110.

■ It is apparent to us, and is not seriously disputed herein, that claimant's interest in worker's compensation benefits is a property right which cannot be taken away without due process of law. Analogous claims were deemed property rights so protected in *Ross v. City of Des Moines,* 249 N.W.2d 648, 650 (Iowa 1977); *Koelling v. Trustees of Skiff Hospital,* 259 Iowa 1185, 1197, 146 N.W.2d 284, 296 (1966).

■ It is well settled the extent and nature of the hearing required for due process varies according to the needs and circumstances of a given case. But is is clear that some pretermination notice is required, under *Goldberg* and the cases it cites, as a component of due process. And it is now well settled that some opportunity must be accorded to protest and present proof as to why a property right should not be terminated. *Memphis Light, Gas and Water v. Craft,* —— U.S. ——, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

■ We believe the due process clauses of both the federal and state constitutions require a procedure for notice of termination, similar to the scheme approved by the United States Supreme Court in *Mathews,* supra. It is to be conceded Code chapter 86 specifies no such requirements. But where a required notice (or hearing) right is not given by statute it " * * * is derived in a proper case from common-law principles embodied in the constitutional guaranty of due process of law. * * *." 2 Am.Jur.2d Administrative Law, § 398 at p. 203.

■ We hold, on the basis of fundamental fairness, due process demands that, prior to termination of workers compensation benefits, except where the claimant has demonstrated recovery by returning to work, he or she is entitled to a notice which, as a minimum, requires the following:

[1] the contemplated termination,

[2] that the termination of benefits was to occur at a specified time not less than 30 days after notice,

[3] the reason or reasons for the termination,

[4] that the recipient had the opportunity to submit any evidence or documents disputing or contradicting the reasons given for termination, and, if such evidence or documents are submitted, to be advised whether termination is still contemplated,

[5] that the recipient had the right to petition for review-reopening under § 86.34.

■ Under the summary procedure employed in the instant case there was no such notice. Accordingly the trial court reached the right result in ruling the commissioner erred as a matter of law in terminating claimant's benefits.

II. The second issue in this appeal has to do with § 85.33, The Code, which provides: "The employer shall pay to the employee for injury producing temporary disability and beginning upon the eighth day thereof, weekly compensation benefit payments for the period of his disability, including the increase in cases to which § 85.32 [when compensation begins] applies." Temporary disability benefits paid under § 85.33 have come to be called "running awards." The deputy commissioner found claimant was permanently disabled and thus not entitled to a running award. The trial court on appeal found claimant was not permanently disabled but only temporarily disabled and therefore entitled to a running award, either for 300 weeks or until such time as the hospital at a hearing established one of two things: (1) claimant's temporary disability had terminated or (2) claimant had become permanently disabled.

Under these somewhat unique circumstances we must review the claims by an injured claimant that her injury is not permanent and by her employer that it is. The trial court's review of the decision of the industrial commissioner of course was not de novo. In Holmes v. Bruce Motor Freight, Inc., 215 N.W.2d 296, 301 (Iowa 1974) we explained existing rules on the scope of our review:

" * * * Whether a particular decision of the commissioner be for the claimant or for the employer, the judicial scope of review is to ascertain whether there is 'sufficient competent evidence in the record to warrant the making of the order or decision.' * * * [W]e regard the commissioner's fact-findings as tantamount to jury findings; if a jury issue is presented, were the case tried to a jury, the commissioner's findings stand. Langford v. Kellar Excavating & Grading, Inc., 191 N.W.2d 667, 668 (Iowa) ('We have variously expressed this rule by saying his findings are binding upon us if supported by substantial evidence; the facts determined by the industrial commissioner have the same effect as a jury verdict; and we may not interfere with such findings where there is a conflict in the evidence or when reasonable minds may disagree as to the inferences to be drawn from the evidence, whether disputed or not.'); (Authority)."

More recently we discussed the scope of our de novo review under the new administrative code. It is governed by § 17A.19, The Code. The question is whether the agency action is " * * * unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; * * *." § 17A.19, subd. 8(f). City of Davenport v. Public Employment Relations Board, 264 N.W.2d 307 (Iowa 1978), and authorities.

■ The question then is whether there was any substantial evidence to support the commissioner's finding claimant's injury was permanent. The commissioner's findings are to be viewed in the light of the evidence as a whole. Olson v. Goodyear Service Stores, 255 Iowa 1112, 1121, 125 N.W.2d 251, 256–257 (1963). We explained the responsibilities of the commissioner in making his findings in Catalfo v. Firestone Tire and Rubber Co., 213 N.W.2d 506, 509–510 (Iowa 1973).

It appears from the statement of the trial court [" * * * and my job will be to search the record to see where the doctor testified that it was his opinion that this was a permanent injury."] that the trial court believed the evidence the disability was permanent should be based on medical testimony.

The trial court searched in vain for any medical evidence of permanency. The closest any medical testimony got to the subject of permanency was the statement of claimant's physician, "it's now hoped that she'll [claimant] finally begin to settle down and that she will be relieved ultimately of some of her low back and right leg discomfort." Both parties take that statement to support their conflicting views on the subject of permanency.

The only possible support we can find for the commissioner's holding that the claimant's disability was permanent and not temporary was in the total pattern of her physical condition.

█ Although the question is an extremely close one we believe on balance the record cannot be said to support the commissioner's finding as to the permanency of claimant's disability. The trial court was right in so finding. We find no merit in the hospital's challenge to the trial court's allowance of the running award.

III. The third issue in this appeal is controlled by our scope of review. Code section 85.27 provides that the employer shall pay reasonable health care services upon gaining notice or knowledge of an employee's injury. The section goes on to provide in material part: "Charges believed to be excessive or unnecessary may be referred to the industrial commissioner for determination, * * *."

Twenty-five medical bills were presented by the claimant. The commissioner ordered four of them paid. These four are not involved in this appeal. Twenty-one bills were disallowed by the commissioner because he determined the claimant had failed to present sufficient evidence to prove a causal connection between the conditions which were the subject of the treatment and the claimant's work-related injury.

The parties stipulated the amounts of the medical bills were fair and reasonable. Accordingly Code section 85.27 required the hospital to furnish claimant with whatever was necessary and needed in treatment of her work-related injury. *Sister Mary Bene-*

*dict v. St. Mary's Corporation,* 255 Iowa 847, 854–856, 124 N.W.2d 548, 553 (1963); *Polson v. Meredith Publishing Company,* 213 N.W.2d 520 (Iowa 1973).

█ Claimant was entitled to recover the expenses in treating whatever aggravation of her pre-existing condition was caused by her work-related injury. *Yeager v. Firestone Tire & Rubber Co.,* 253 Iowa 369, 374–375, 112 N.W.2d 299, 302 (1961). On the question of what sort of evidence might tend to connect up a disability and a work-related injury we held in *Anderson v. Oscar Mayer & Co.,* 217 N.W.2d 531, 536 (Iowa 1974) the commissioner could, but would not be required, to make an award upon expert testimony that the present condition "might be" so casually connected.

█ We find the commissioner could find from this record that the claimant failed to prove a causal connection between the work-related injury and the condition treated in the 21 disallowed medical bills. Our review on that question, like that of the trial court, is not *de novo.* In division II of this opinion we pointed out that the commissioner's findings are binding upon us if supported by substantial evidence. We believe, on this assignment, they were. It was error for the trial court to determine claimant had established a causal connection as a matter of law.

In summary we affirm the trial court for ruling the commissioner erred as a matter of law in terminating claimant's benefits. We affirm the trial court's allowance of the running award. We reverse the trial court on the question of the 21 medical bills and reinstate the commissioner's disallowance of them. Tax costs two thirds to the hospital and one third to claimant.

AFFIRMED IN PART, REVERSED IN PART, BUT NOT REMANDED.

All Justices concur.