Frohlich v. ND Workers Comp. Bureau, 556 N.W.2d 297 (N.D. 1996)|N.D. Supreme Court|
Frohlich v. ND Workers Comp. Bureau, 556 N.W.2d 297 (N.D. 1996)
[Go to Documents]
Filed Dec. 10, 1996
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
Donald Frohlich, Claimant and Appellant
v.
North Dakota Workers Compensation Bureau and Saks News, Inc., Appellees
Civil No. 960158
Appeal from the District Court for Burleigh County, South Central Judicial District, the Honorable Gail Hagerty, Judge.
REVERSED AND REMANDED.
Opinion of the Court by Meschke, Justice. Stephen D. Little (argued), of Dietz & Little, 2718 Gateway Ave., #301, Bismarck, ND 58501, for claimant and appellant. Jacqueline S. Anderson (argued), Special Assistant Attorney General, of Nilles, Hansen & Davies, Ltd., P.O. Box 2626, Fargo, ND 58108, for appellee North Dakota Workers Compensation Bureau. Steven L. Latham (appearance), of Wheeler Wolf, P.O. Box 2056, Bismarck, ND 58502-2056, for appellee Saks News, Inc.
[556 N.W.2d 298]
Frohlich v. N.D. Workers Compensation Bureau and Saks News, Inc.
Civil No. 960158
Meschke, Justice.
Donald R. Frohlich appealed from a judgment affirming a Workers Compensation Bureau order denying him temporary total disability benefits after May 25, 1991. We hold that the Bureau's failure to request doctor certification of the period of Frohlich's temporary total disability violated NDCC 65-05-08.1. We reverse the judgment and direct the Bureau to award Frohlich temporary total disability benefits through June 14, 1994.
Frohlich worked for Saks News, Inc. for 34 years at various jobs that required overhead
[556 N.W.2d 299]
lifting of bundles of magazines and books. In February 1980, Dr. Ray Miller surgically repaired Frohlich's right rotator cuff for a non-work related injury.
In 1988, Frohlich began experiencing pain in his left shoulder, and on November 10, 1989, Dr. Miller surgically repaired Frohlich's left rotator cuff. On May 2, 1990, Dr. Miller reported that Frohlich had regained a full range of motion with his left shoulder, but that it needed further strengthening. Dr. Miller also reported that Frohlich was now experiencing similar symptoms in his right shoulder and "suggested that [Frohlich] is going to be disabled for at least a year and maybe longer, pending the type of surgery and outcome of surgery on his right shoulder."
On May 23, 1990, Frohlich filed for workers compensation benefits, claiming a "progressive" injury to his left and right shoulders. On May 25, 1990, Saks News and Frohlich executed a "separation agreement and general release" outlining the terms of Frohlich's "transition from full employment to retirement." They agreed Frohlich was unable to physically perform the continued requirements of his job, and Frohlich's last day of work at Saks News was November 9, 1989, the day before he underwent left rotator cuff surgery.
On October 29, 1990, the Bureau informally dismissed Frohlich's claim for benefits on the ground that he had failed to show an injury from his employment. Frohlich requested a rehearing, and on April 10, 1991, the Bureau held a formal hearing to consider whether his shoulder problems were related to his employment. The hearing was postponed to March 20, 1992, and the issues were expanded to include whether Frohlich had timely filed for benefits and whether he had voluntarily retired from his job.
By order dated March 30, 1993, hearing officer Schneider concluded that Frohlich's shoulder problems were related to his employment. Schneider found, however, that Frohlich knew his work had been adversely affecting his left shoulder more than a year before he filed his claim for benefits on May 23, 1990, and that, under NDCC 65-05-01, his left shoulder claim was not timely. Schneider also found that Frohlich's claim for benefits for his right shoulder was timely and awarded him temporary total disability benefits for that shoulder starting May 25, 1990.
On April 26, 1993, Saks News asked the Bureau's executive director to reconsider Schneider's decision. On September 2, 1993, the executive director reversed Schneider's decision, ruling that Frohlich had failed to prove his right shoulder condition was causally related to his employment and that he had failed to file a timely claim for his right shoulder under NDCC 65-05-01. In January 1994, the district court reversed the executive director's decision and reinstated Schneider's decision, holding that the Bureau had not disposed of the employer's request for reconsideration within 30 days under NDCC 28-32-14(4), and, therefore, that request was deemed denied. Saks News appealed the court's decision but, in May 1994, the Bureau, Frohlich, and Saks News stipulated to dismiss that appeal.
While these administrative and judicial proceedings were pending, Frohlich apparently did not seek further treatment for his right shoulder, did not pursue rehabilitation services, nor look for other employment. On March 28, 1994, the Bureau awarded Frohlich temporary total disability benefits for his right shoulder from May 25, 1990 through May 25, 1991, but the Bureau concluded that, absent a significant change in his medical condition, he was not entitled to further disability benefits. Frohlich requested a hearing regarding the duration of his disability benefits.
Before that hearing, Dr. Michael Martire examined Frohlich on May 2, 1994, and concluded "it is obvious that [he] would still be unable to do any type of duties which require any repetitive lifting, especially with overhead activities. He would not be able to return to his prior job because this would require lifting above shoulder height." Dr. Martire reported a "slight recent aggravation of the right shoulder pain," and recommended a cortisone injection. Dr. Martire also suggested that, after Frohlich's pain subsided, he would be at maximum medical
[556 N.W.2d 300]
improvement and then an evaluation for permanent partial impairment could be done.
The Bureau referred Frohlich for an independent medical examination by Spokane Panel Evaluations, who reported:
With regard to Mr. Frohlich's present diagnoses as enumerated above with respect to the right shoulder, there is at this time a problem. It is related to both his 1980 injury and surgical repair, and by fair wear & tear associated with his employment. Apportionment cannot be scientifically done, but the examiners feel that probably 50% of his current problems in the right shoulder can be attributed to or are secondary to the injury and surgery of 1980, and the remaining 50% is associated with this man's employment and is work related.
With respect to disability, we do not feel that Mr. Frohlich is totally disabled for work with regard to his overall physical condition. The right shoulder tends to pose some limitation in his level of activity, and this impairment would be shared equally by the injury and surgery in 1980 and his employment.
An examining physician at the Spokane Panel, Dr. William Nerud, concluded that Frohlich was unable to return to the "warehouse type [of] heavy work" that he had previously done, but that he was not totally disabled and would need to avoid jobs with overhead lifting.
On June 14, 1994, Dr. Martire reported Frohlich was at "maximum medical improvement" and recommended a permanent partial impairment evaluation. On September 8, 1994, Dr. Martire evaluated Frohlich for permanent partial impairment and reported he had a 7 percent impairment of his right upper extremity. The Bureau nevertheless informally awarded Frohlich benefits for a 3.55 percent permanent partial impairment. Saks News and Frohlich both requested a hearing on the Bureau's permanent partial impairment award.
The parties agreed to combine the issues of the duration of Frohlich's disability and the extent of his permanent partial impairment into a single hearing on the existing record and with the deposition testimony of Dr. Nerud. Hearing officer Brady concluded that hearing officer Schneider's March 30, 1993 decision was res judicata on whether Frohlich's right shoulder condition was a compensable injury and whether Frohlich had voluntarily retired from the work force; that the Bureau's apportionment of permanent partial impairment benefits was supported by a preponderance of the evidence; that Frohlich had failed to establish he was entitled to temporary total disability benefits after May 25, 1991; that the extent of any partial disability after May 25, 1991, could not be ascertained because the Bureau had not evaluated Frohlich's earning capacity and he had offered no evidence on the subject; and that Frohlich had voluntarily withdrawn from the labor force. The Bureau adopted Brady's recommendations, and Frohlich appealed to the district court.(1)
In the district court, the Bureau agreed Frohlich had a 7.1 percent permanent partial impairment, and the court directed the Bureau to award him benefits for that degree of impairment. The court, however, affirmed the Bureau's decision to deny Frohlich disability benefits beyond those awarded for the interval between May 25, 1990 and May 25, 1991. Frohlich appealed to this court, contending the Bureau erred in denying him temporary total disability benefits after May 25, 1991.
On appeal from a district court's review of a decision by the Bureau, we review the Bureau's decision. Siewert v. North Dakota Workers Comp. Bureau, 554 N.W.2d 465, 466 (N.D. 1996). We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law.
[556 N.W.2d 301]
Id.; seeNDCC 28-32-19; 28-32-21. In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact, or substitute our judgment for that of the Bureau. Siewert, 554 N.W.2d at 467. Rather, as we said in Siewert at 467, we decide only whether the Bureau's findings adequately explain its decision and were reasonably supported by the greater weight of the evidence.
The claimant has the burden of proving by a preponderance of the evidence that he is entitled to receive benefits from the fund. NDCC 65-01-11; Nemec v. North Dakota Workers Comp. Bureau, 543 N.W.2d 233, 237 (N.D. 1996). If the Bureau terminates benefits after accepting a claim, the claimant still has the burden of proving the right to continued benefits. Siewert, 554 N.W.2d at 467; Kopp v. North Dakota Workers Comp. Bureau, 462 N.W.2d 132, 135 (N.D. 1990). Although the claimant has the burden of proving the right to continued benefits, the Bureau must not place itself in a position fully adversary to the claimant. Hayes v. North Dakota Workers Comp. Bureau, 425 N.W.2d 356, 357 (N.D. 1988). Moreover, as we held in Beckler v. North Dakota Workers Comp. Bureau, 418 N.W.2d 770, 775 (N.D. 1988), due process requires the Bureau to give a claimant prior notice of termination of disability benefits, a summary of the medical evidence supporting termination, and an opportunity to respond.
Frohlich argues that, although he has the burden of establishing his right to continued disability benefits, he was not required to show that he was disabled from all types of work, only that he was disabled from performing his usual and customary work. He contends that he was never released to return to any type of work, the Bureau did not determine he was suited for other employment, nor did it provide him rehabilitation services under NDCC ch. 65-05.1. He therefore asserts that, under the definition of disability in NDCC 65-01-02(13), he was entitled to disability benefits until he reached maximum medical recovery with a work release.
NDCC 65-01-02(13) defines "disability" as
loss of earnings capacity and may be permanent total, temporary total, or partial.
* * * * *
b. Temporary total disability is total in character but temporary in nature and is paid to the employee until maximum medical recovery with work release to any occupation for which the employee is reasonably suited by aptitude, education, experience, or training.
Under that definition, an employee's continued entitlement to disability benefits is linked to the employee's maximum medical recovery and to physical and vocational ability to return to work.
Here, Frohlich's May 23, 1990 claim for benefits was mired in protracted administrative and judicial proceedings that, in January 1994, finally culminated in an award of disability benefits beginning May 25, 1990 and running for an indeterminate period. In March 1994, the Bureau denied Frohlich disability benefits after May 25, 1991, relying on Dr. Miller's outdated May 2, 1990 report that Frohlich "is going to be disabled for at least a year and maybe longer." This is not a situation where the Bureau discontinued benefits, and then Frohlich reapplied under NDCC 65-05-08(2). Rather, this award was a continuous, ongoing grant of benefits, compare Nemec, 543 N.W.2d at 237-38 (benefits awarded for a closed five-day period), and the Bureau sought to terminate further benefits without an updated medical report addressing the duration of Frohlich's disability or his physical or vocational work limitations.
A new statute on verifying temporary total disability, NDCC 65-05-08.1,(2) was adopted
[556 N.W.2d 302]
while Frohlich's claim was pending but made applicable to "all claims irrespective of injury date," 1993 N.D. Laws ch. 627, 2 and 1991 N.D. Laws ch. 714, 44, 77, although it was inexplicably not cited to us by the parties. This applicable statute directs a procedure for updating medical reports by medical certification of the duration of the claimant's temporary total disability "upon request of the bureau." NDCC 65-05-08.1(1). In Nemec, 543 N.W.2d at 238, we recently said that NDCC 65-05-08.1(1) unambiguously requires that a claimant's treating doctor must provide an opinion on the length of disability "if requested by the Bureau," does not dictate that only the claimant's treating doctor may provide the opinion, and does not confine the Bureau to the treating doctor's opinion.
Further, NDCC 65-05-08.1(5) and (6) direct notification procedures for terminating temporary total disability benefits when an updated medical report has not been filed with the Bureau, or when the claimant has been released to return to work. SeeBeckler, 418 N.W.2d at 773-75. Seealso Nemec, 543 N.W.2d at 237-38. Those statutory pretermination procedures emphasize the necessity for updated medical reports and flesh out the due process requirements of Beckler. As we explained in Beckler at 774-75, the risk of an erroneous termination of benefits without adequate medical documentation outweighs the competing governmental interests and requires pretermination procedural protections.
NDCC 65-05-08.1 is obviously intended to implement those pretermination protections and to prevent gaps in a claimant's medical record through updated medical reports about the duration of a claimant's disability. Although NDCC 65-05-08.1(4) directs the claimant to "ensure that the required reports are filed," NDCC 65-05-08.1(1) requires doctor certification of the period of the claimant's temporary total disability "upon request of the bureau." Construing NDCC 65-05-08.1 as a whole in conjunction with the Bureau's pretermination obligations and its limited adversarial role in deciding claims, we believe the onus is on the Bureau to request medical certification of the duration of the claimant's disability, and thereafter the claimant must ensure that the requested reports are filed.
Here, the Bureau does not dispute that Frohlich was physically unable to return to his previous job with Saks News. Dr. Miller apparently did not treat Frohlich beyond 1990, and after his May 2, 1990 report, Dr. Miller was not asked to certify Frohlich's period of disability, or his date of maximum medical recovery. In April 1992, the Bureau asked Dr. Roswick whether Frohlich's
[556 N.W.2d 303]
shoulder complaints were work related, but the Bureau did not request a report from Dr. Roswick about the duration of Frohlich's disability, or his date of maximum medical recovery. Based on that stale medical record, on March 28, 1994, the Bureau terminated Frohlich's disability benefits after May 25, 1991. However, the circumstance that Frohlich's claim was pending in a protracted administrative and judicial morass did not absolve the Bureau from its responsibility under NDCC 65-05-08.1 to "request" an updated medical certification of the duration of Frohlich's disability before terminating his benefits. Even after the Bureau's March 28, 1994 order denying Frohlich further disability benefits, the Bureau did not "request" a report certifying the period of Frohlich's disability from any of the doctors then involved in this case.
Although Frohlich has the burden of showing his right to continue receiving benefits, there is a rudimentary difference between the claimant's ultimate burden of proof and the Bureau's obligations under NDCC 65-05-08.1. That difference parallels the Bureau's limited adversarial role and its pretermination obligations under Beckler. Under these circumstances, we believe the Bureau had a statutory obligation to "request" updated medical reports about the duration of Frohlich's disability before terminating further disability benefits. Because the Bureau failed to do so, we conclude its unfounded 1994 informal decision to terminate Frohlich's disability benefits after May 25, 1991, was not in accordance with the law. Absent an updated medical certification at that time, we hold that Frohlich was entitled to disability benefits from May 25, 1991, until the updated medical assessment by Dr. Martire certified Frohlich was at maximum medical improvement on June 14, 1994. See Beckler, 418 N.W.2d at 775 (claimant entitled to disability benefits for the time he did not work, because Bureau failed to follow necessary pretermination procedures). Not until June 14, 1994, did the then available medical reports by Dr. Martire and the Spokane Panel indicate that Frohlich was not totally disabled, although he still had some physical limitations on his ability to work. Frohlich was then, in effect, medically released for work. Because Frohlich still had some physical limitations, however, we express no opinion about the availability to him of partial disability benefits, see NDCC 65-01-02(13)(c), or rehabilitation services, see NDCC ch. 65-05.1, after June 14, 1994.
We reverse the district court judgment and remand with instructions to direct the Bureau to award Frohlich benefits in accordance with this opinion.
Herbert L. Meschke
Mary Muehlen Maring
William A. Neumann
Georgia Dawson, D.J.
Gerald W. VandeWalle, C.J. GEORGIA DAWSON, D. J.
, sitting in place of Sandstrom, J., disqualified. Footnotes:
1. Under NDCC 28-32-15(4), Frohlich's notice of appeal outlined the same boilerplate specifications of error that we prospectively held insufficient in Vetter v. North Dakota Workers Comp. Bureau, 554 N.W.2d 451, 454 (N.D. 1996), and Dean v. North Dakota WorkersComp. Bureau, 554 N.W.2d 455, 456 (N.D. 1996). 2. NDCC 65-05-08.1 directs:
Verification of temporary total disability.
1. The claimant's doctor shall certify the period of temporary total disability upon request of the bureau.
2. A doctor certifying disability shall include in the report filed with the bureau:
a. The medical basis established by medical evidence supported by objective medical findings for the certification of disability;
b. Whether the employee is totally disabled, from any and all employment, or whether the employee is able to return to some employment, including light work or sedentary work;
c. If the employee is not totally disabled, a statement of the employee's restrictions and physical limitations; and
d. A professional opinion as to the expected length of, and reason for, the disability.
e. A doctor may not certify or verify past disability unless the doctor has examined the employee within the previous sixty days and filed those reports required by this title.
3. The report must be filed on a form furnished by the bureau, or on any other form acceptable to the bureau.
4. The claimant shall ensure that the required reports are filed.
5. Prior to expiration of a period of temporary total disability certified by a doctor, if a report certifying an additional period of disability has not been filed, the bureau shall send a notice to the claimant of intention to discontinue benefits, the reason therefor, and an explanation of the right to respond and the procedure for filing the required report or challenging the proposed action. A copy of the notice must be mailed to the claimant's doctor. Thereafter, if the required certification is not filed, the bureau shall discontinue temporary total disability benefits by formal order, effective no sooner than twenty-one days after the date of notice of intention to discontinue benefits is mailed.
6. Upon receipt of a report or other evidence indicating a claimant who is receiving temporary total disability benefits has been or will be released to return to work, the bureau shall issue and mail to the claimant a notice of intention to discontinue benefits. Such benefits may thereafter be discontinued on the date of release to return to work or twenty-one days following mailing of the notice, whichever is later. The notice must include a statement of the reason for the action, a brief summary of the evidence relied upon by the bureau, and an explanation of the right to respond and the procedure for challenging the action and submitting additional evidence to the bureau.