1998 ND 11

**David FLINK, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
**Appellee,**

and

**Fargo Trailer Center, Inc., Respondent.**
**Civil No. 970162.**

Supreme Court of North Dakota.

Jan. 20, 1998.

Rehearing Denied and Opinion Corrected
Feb. 12, 1998.

Mark G. Schneider of Schneider, Schneider & Schneider, Fargo, for claimant and appellant.

Andrew L.B. Noah, Special Assistant Attorney General, Fargo, for appellee.

SANDSTROM, Justice.

[¶ 1] David Flink appeals from a district court judgment affirming the North Dakota Workers Compensation Bureau's order he was not entitled to temporary total disability benefits after May 5, 1993. We conclude the administrative law judge's conclusion Flink was released to return to work on October 16, 1991, is not supported by a preponderance of the evidence. We also conclude the Bureau's notice discontinuing temporary total disability benefits was insufficient and resulted in an unfair hearing. We reverse and remand and direct the Bureau to reinstate, retroactive to May 5, 1993, Flink's temporary total disability benefits, and to

continue them until the Bureau properly addresses Flink's priority options and provides him with proper notice of its intent to discontinue or reduce his benefits.

I

[¶ 2] David Flink suffered a work-related injury to his lower back on April 30, 1990. He filed a claim with the North Dakota Workers Compensation Bureau, and the Bureau issued an order awarding benefits. He was also diagnosed as suffering from a preexisting, non-work-related "[s]ocial phobia."

[¶ 3] In January 1991, the Bureau assigned Bob Schmidt, a vocational consultant, to work with Flink. In June 1992, Schmidt issued a "Vocational Consultant's Report Assessment/Plan" calling for Flink to attend formal retraining in the area of "parts management" at the North Dakota State College of Science. The Bureau approved the plan, but the plan failed when Flink began to develop panic attacks, leaving him unable to function in a classroom setting, and he dropped out of the program. In December 1992, Schmidt completed a "Vocational Consultant's Report Assessment/Plan Amendment" and recommended a so-called "option i"[1] rehabilitation priority under N.D.C.C. § 65–05.1–01(5). The Bureau approved the amended plan on February 16, 1993.

[¶ 4] On April 14, 1993, the Bureau informed Flink it intended to discontinue temporary total disability benefits. The Bureau issued its "Order Denying Further Disability Rehabilitation Benefits" on June 11, 1993. Flink requested a hearing, arguing Schmidt and the Bureau did not follow the priority options in recommending an "option i" rehabilitation priority.

[¶ 5] Flink and Schmidt were the only witnesses at the hearing. Schmidt testified he eliminated option e, on-the-job training, from consideration because no on-the-job training employer could be secured, although Schmidt admitted he did not recall having contacted any specific employers. The administrative law judge (ALJ) concluded:

> "with regard to on-the-job training, the greater weight of the evidence shows that the vocational consultant's report did not address, through adequate findings, the viability of that option, and whether it would or would not return Mr. Flink to substantial gainful employment."

The ALJ also concluded Schmidt failed to address why option h, self-employment, was not viable, but then went on to determine self-employment was not " 'reasonably attainable.' "

[¶ 6] Neither Dr. Wolff, Flink's treating physician, nor Dr. Christianson, Flink's psy-

1. The term "option i," as used by the parties to refer to N.D.C.C. § 65–05.1–01(5)(1993), is so named because before recommending it, the vocational consultant must first conclude none of the options under N.D.C.C. § 65–05.1–01(4) are available. Prior to 1995, N.D.C.C. § 65–05.1–01 provided, in part:

> "4. The first appropriate option among the following, calculated to return the employee to substantial gainful employment, must be chosen for the employee:
> a. Return to the same position.
> b. Return to a modified position.
> c. Return to a related occupation in the local job pool which is suited to the employee's education, experience, and marketable skills.
> d. Return to a related occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.
> e. On-the-job training.
> f. Short-term retraining of fifty-two weeks or less.
> g. Long-term retraining of one hundred four weeks or less.
> h. Self-employment.

> "5. If the vocational consultant concludes that none of the priority options under subsection 4 of section 65–05.1–01 are viable, and will not return the employee to the lesser of seventy-five percent of the average weekly wage, or the employee's preinjury earnings, the employee shall continue to minimize the loss of earnings capacity, to seek, obtain, and retain employment:
> a. That meets the employee's medical limitations;
> b. In which the employee meets the qualifications to compete; and
> c. Which will reasonably result in retained earnings capacity equivalent to the lesser of the employee's preinjury earnings or fifty percent of the average weekly wage in the state on the date the rehabilitation consultant's report is issued.
> An award of partial disability due to retained earnings capacity under this section must be made pursuant to section 65–05–10."

The June 1992 vocational consultant's plan sent Flink to the North Dakota State College of Science under option g. N.D.C.C. § 65–05.1–01(4) has since been amended to include options a through j.

chiatrist, testified at the hearing. The ALJ concluded, however:

"While I can find no certification of maximum medical improvement relative to his work-sustained back injury in Mr. Flink's file, the file does document that on October 16, 1991 Terry Wolff, M.D., his treating physician, released him to return to work with the restrictions detailed in a modified functional capacity assessment performed on September 25, 1991, i.e., generally, medium work. The Bureau's notice of April 14, 1993 of its intention to terminate temporary total disability benefits and to begin paying partial disability benefits, insofar as the effective date of termination might be changed to May 5, 1993, is, then, found to be consistent with the import of NDCC § 65–05–08.1 relating to termination of temporary total disability benefits following a release to work, and therefore valid, despite the recommended findings, above, that the viability of on-the-job training be reassessed."

The Bureau adopted the ALJ's recommendations, and the district court affirmed the Bureau's decision.

[¶ 7] Flink appeals from the March 31, 1997, judgment of the Cass County District Court. The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–15, and 65–10–01. Flink's appeal to this Court was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–32–21.

II

[¶ 8] "On appeal, we review the decision of the Bureau, rather than that of the district court, and we limit our review to the record before the Bureau." *Fuhrman v. North Dakota Workers Compensation Bureau*, 1997 ND 191, ¶ 6, 569 N.W.2d 269. "Under NDCC 28–32–19 and 28–32–21, we affirm an agency's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or the decision is not in accordance with the law." *Feist v. North Dakota Workers Com-*

*pensation Bureau*, 1997 ND 177, ¶ 8, 569 N.W.2d 1. We also affirm under N.D.C.C. § 28–32–19, unless the agency's order violates the constitutional rights of the appellant or the agency's rules or procedures deprived the appellant of a fair hearing.

[¶ 9] "Our review of an administrative agency's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Feist* at ¶ 8; *see Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). "The interpretation of a statute is a question of law fully reviewable on appeal. Although we have construed workers compensation laws liberally in favor of injured workers, a claimant has the burden of proving he or she is entitled to participate in the workers compensation fund." *Feist* at ¶ 8 (citations and footnote omitted). "If the Bureau terminates benefits after accepting a claim, the claimant still has the burden of proving the right to continued benefits." *Frohlich v. North Dakota Workers Compensation Bureau*, 556 N.W.2d 297, 301 (N.D. 1996). However, "the Bureau must not place itself in a position fully adversary to the claimant," and "due process requires the Bureau to give a claimant prior notice of termination of disability benefits, a summary of the medical evidence supporting termination, and an opportunity to respond." *Frohlich* at 301.

III

[¶ 10] Flink asserts the Bureau failed to properly address the priority options and, as such, the Bureau is required to pay temporary total disability benefits until the priority options are properly addressed. On appeal, the Bureau does not dispute the conclusion the vocational consultant failed to adequately address the rehabilitation priority options; rather, the Bureau argues discontinuation of Flink's temporary total disability benefits was proper, based upon Flink having "reached maximum medical recovery" and been "released to return to work."

[¶ 11] We reverse and remand because the ALJ's conclusion Flink was released to return to work on October 16, 1991, ignores and fails to explain medical evidence to the contrary, and because the Bureau's April 14,

1993, notice of intent to discontinue Flink's temporary total disability benefits was insufficient to provide Flink a fair hearing on the issue of being released to return to work.

### A

[¶ 12] The ALJ stated in his decision: "While I can find no certification of maximum medical improvement relative to his work-sustained back injury in Mr. Flink's file, the file does document that on October 16, 1991 Terry Wolff, M.D., his treating physician, released him to return to work...." While a claimant has the burden of proving his or her claim, "[t]he adversarial concept has only limited application in a worker's compensation claim [and][t]he Bureau must consider the entire medical record and adequately explain its reason for disregarding medical evidence favorable to the claimant." *McDaniel v. North Dakota Workers Compensation Bureau*, 1997 ND 154, ¶ 17, 567 N.W.2d 833 (citations omitted).

[¶ 13] Nowhere in Dr. Wolff's October 16, 1991, notes does he state he released Flink to return to work. Dr. Wolff does note, however, "the patient is not at MMI [Maximum Medical Improvement]." The June and December 1992 vocational consultant's plans do state Dr. Wolff released Flink to return to work on October 16, 1991, "pending release by Davis's psychologist...." The Bureau's appellate brief acknowledges, however, this did not occur until January 12, 1993. While the Bureau has discretion to weigh the evidence before it, this Court has previously stated "discretion is not freedom to pick and choose in an unreasonable manner." *Weber v. North Dakota Workmen's Compensation Bureau*, 377 N.W.2d 571, 572 (N.D.1985). It appears the ALJ merely picked a date from the mass of medical records without explaining contrary medical records, or he overlooked evidence to the con-

trary.[2] Based on Dr. Wolff's October 16, 1991, notes and the ALJ's failure to consider Flink's entire medical record and explain why contrary evidence was ignored, the ALJ's decision is not supported by a preponderance of the evidence. *Compare Wherry v. North Dakota State Hosp.*, 498 N.W.2d 136, 140–41 (N.D.1993) (affirming Bureau's decision based upon adequate explanation).

### B

[¶ 14] It appears the absolute lack of medical testimony at the hearing concerning when Flink was released to return to work can be traced to the Bureau's April 14, 1993, notice of intent to discontinue his temporary total disability benefits. Based upon his conclusion Flink had been released to return to work on October 16, 1991, the ALJ concluded the Bureau's April 14, 1993, notice of intent to discontinue benefits was "consistent with the import of NDCC § 65–05–08.1 relating to termination of temporary total disability benefits following a release to work, and therefore valid...." The ALJ's conclusion the Bureau may discontinue benefits based upon Flink having been released to work is in line with our decisions, including *Frohlich v. North Dakota Workers Compensation Bureau*, 556 N.W.2d 297, 301 (N.D.1996). But, as was also stated in *Frohlich*, "due process requires the Bureau to give a claimant prior notice of termination of disability benefits, a summary of the medical evidence supporting termination, and an opportunity to respond." *Frohlich* at 301.

[¶ 15] This Court first enunciated a due process standard for notice in workers compensation claims in *Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770, 775 (N.D.1988), and these requirements have been incorporated into N.D.C.C. § 65–05–08.1. *See Frohlich* at 302. Under N.D.C.C. § 65–05–08.1(6),[3] the Bureau was

---

2. While we need not recount Flink's entire medical record, some of Flink's medical records after October 16, 1991, illustrate the lack of evidence supporting the ALJ's decision. For example, on November 27, 1991, Dr. Wolff diagnosed a "[r]eexacerbation of myofasciitis [sic] of mechanical back syndrome." On June 23, 1992, Dr. Wolff wrote to Flink's attorney, stating "I will be seeing Mr. Flink in the office July 1st and will see if we can ascertain maximum medical improvement date." Dr. Wolff's notes from July 1, 1992,

state "I feel that the patient has reached maximum medical improvement as of January 1, 1992." In a subsequent letter to the Bureau, Dr. Wolff noted July 1, 1992—not January 1, 1992—was the date he determined to be the maximum medical improvement date.

3. Subsection 6 of N.D.C.C. § 65–05–08.1 was "deleted" in 1997 by consolidating it with subsection 5.

required to send claimants a notice of intention to discontinue benefits and "[t]he notice must include a statement of the reason for the action [and] a brief summary of the evidence relied upon by the bureau...." The April 14, 1993, notice sent to Flink includes four possible pre-printed choices, with boxes for the Bureau to check beside each choice, and blanks for the Bureau to fill in with the appropriate information. The choices read:

"1. You have returned to employment on [_____]

"2. You have been released to return to employment by Dr. [_____ ]
The release indicates you are able to return to work on [_____ ] without restrictions or with the restrictions listed below.
Based on this release you are NOT entitled to additional benefits as your job is within these restrictions.

\* \* \* \* \* \*

"4. Reasons other than above. Reasons and facts are below."

The Bureau did not mark choice number two and name the doctor who released Flink to return to work and the date upon which he was released to return to work. Rather, choice four was marked, after which the Bureau added its "Reasons and facts":

"You have transferrable skills under your vocational plan that has been approved by the Bureau. Please see your voc plan. You are no longer eligible for temporary total disability benefits[.] However, you are eligible for temporary partial benefits based on the earning capacity of $180.00 per week."

[¶ 16] Thus, as required by the statute, Flink was given a "statement of the reason for the [Bureau's] action." The reason stated in the Bureau's notice, however, is clearly unrelated to discontinuing benefits based upon being released to work, which marking choice number two would have conveyed. Merely giving some reason for discontinuing benefits is insufficient. As this Court has previously stated: "The right to a fair hearing comporting with due process includes reasonable notice or opportunity to know of the claims of opposing parties and an opportunity to meet them." *Municipal*

*Servs. Corp. v. North Dakota Dep't of Health and Consol. Lab.*, 483 N.W.2d 560, 564 (N.D. 1992). In this case, there appears to be no way Flink could have known whether he had been released to return to work would be an issue and ultimately the basis for the ALJ's decision. Flink was essentially blindsided by the ALJ relying on Flink having been released to return to work, because by marking choice number four, instead of choice number two, the Bureau indicated being released to work was not at issue. We question whether the Bureau even anticipated the issue of Flink's having been released to work would determine this matter, because during the hearing the Bureau's attorney asked no questions regarding Flink being released to return to work.

[¶ 17] There was no testimony at the hearing regarding the date Flink was released to return to work, and Flink's doctors did not testify. The hearing's primary focus was whether the vocational consultant had properly addressed Flink's rehabilitation priority options. The focus upon the vocational consultant's efforts, or lack thereof, further illustrates the Bureau's notice to Flink failed "to fairly advise[ ] [Flink] of what the [Bureau] propose[d]...." *Municipal Servs. Corp.* at 564.

[¶ 18] If the Bureau intended to reduce Flink's benefits, based upon his having been released to return to work, it should have clearly notified Flink by marking choice number two and naming the doctor, the date, and any medical evidence indicating Flink was ready to be or had been released to return to work. N.D.C.C. § 65–05–08.1; *cf.* N.D.C.C. § 28–32–19(4) (stating we affirm the Bureau's decision unless "[t]he rules or *procedure* of the agency have not afforded the appellant a fair hearing"). Had the Bureau provided Flink with proper notice, he would have "known what [he] was 'up against'" and would have had the opportunity to challenge the determination he had been released to work on October 16, 1991, *Municipal Servs. Corp.* at 565, although the burden would have remained upon Flink to show he was entitled to, continued benefits. *Frohlich* at 301, 303 ("Although Frohlich has the burden of showing his right to continue receiving benefits, there is a rudimentary

difference between the claimant's ultimate burden of proof and the Bureau's obligations under NDCC 65–05–08.1."). The Bureau argues "[t]he record establishes that Flink was not 'totally disabled' on May 6, 1993, or thereafter" Until proper notice is given, the fact the record discloses evidence Flink might have been released to return to work is irrelevant. See N.D.C.C. §65-05-08.1 (requiring notice of intent to discontinue benefits where claimant *"has been* or will be released to return to work"). "Parties not afforded fair opportunity to prepare their cases are entitled to a second chance." *Municipal Servs. Corp.* at 565; N.D.C.C. § 28–32–19(4).

[¶ 19] Because the Bureau failed to properly address Flink's rehabilitation options and also failed to give Flink proper notice, "we hold that he is entitled to the benefits he seeks." *Beckler* at 775. The Bureau's decision denying Flink temporary total disability benefits as of May 5, 1993, is reversed, and Flink is entitled to temporary total disability benefits retroactive to May 5, 1993, and prospectively until the Bureau adequately addresses Flink's rehabilitation options and provides proper notice of intention to discontinue or reduce benefits. Upon receiving proper notice, Flink may challenge the Bureau's decision and request a hearing. *See* N.D.C.C. §§ 65–05–08.1 (requiring Bureau's notice to include explanation of procedure to challenge Bureau's action) and 65–01–16 (providing for hearing, reconsideration, and rehearing).

### IV

[¶ 20] Flink argues the district court erred in considering exhibits not part of the "agency record." Flink argues the Bureau was required to follow the procedure outlined in N.D.C.C. § 28–32–18 if it wished to place these exhibits before the district court.

[¶ 21] The district court should not have relied on evidence not in the agency record. *See* N.D.C.C. § 28–32–19; *cf. L.C. v. R.P.,* 1997 ND 96, ¶ 15 n. 3, 563 N.W.2d 799, n. 3. The Bureau must seek leave to offer additional evidence. N.D.C.C. § 28–32–18. If leave is granted, remand to the agency is necessary for the agency to "consider[ ] the additional evidence." N.D.C.C. § 28–32–18. Once the agency has considered the evidence,

it "may amend or reject its findings of fact, conclusions of law, and order, and *shall* file with the court a transcript of the additional evidence together with its new or amended findings of fact, conclusions of law, and order, if any, *which constitute a part of the record with the court."* N.D.C.C. § 28–32–18 (emphasis added). We have reversed the judgment of a district court when it relied on material not in the record. *See Knutson v. North Dakota Workmen's Compensation Bureau,* 120 N.W.2d 880, 883 (N.D.1963). We recently sanctioned an attorney, personally, for attempting to rely on materials not in the record. *See Hurt v. Freeland,* 1997 ND 194, ¶¶ 8–15, 569 N.W.2d 266. Because we have not previously noted similar conduct by the Bureau, we do not impose such sanctions here. We may not always be so willing to allow "one free strike."

### V

[¶ 22] The ALJ's findings of fact are not supported by a preponderance of the evidence, and Flink was not afforded a fair hearing; therefore, the judgment of the district court is reversed, the Bureau's decision is reversed, and we remand this case to the Bureau for further proceedings.

[¶ 23] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.

