1998 ND 227

**Valeriy SAAKIAN, Claimant and Appellant,**

v.

**The NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
Appellee,

and

**Bismarck Transportation, Inc., Respondent.**

**Civil No. 980122**

Supreme Court of North Dakota.

Dec. 22, 1998.

Stephen D. Little, of Dietz, Little & Haas, Bismarck, N.D., for claimant and appellant.

Tracy Vigness Kolb, Special Assistant Attorney General, Bismarck, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Valeriy Saakian appealed from a judgment affirming a Workers Compensation Bureau order denying him disability benefits. We conclude Saakian had adequate notice his entitlement to disability benefits was an issue to be determined at the administrative hearing on compensability of his claim. We also conclude the Bureau's finding Saakian was not disabled when it initially dismissed his claim is supported by a preponderance of the evidence. We affirm.

I

[¶ 2] During the summer of 1996, Saakian was employed as a car washer by Bismarck Transportation, Inc., doing business as Taxi 9000. He had been employed there since December 1995, and his work duties included washing, vacuuming, and changing oil on various types of vehicles, as well as general maintenance in the office and mechanical areas of the building. Saakian, a 38–year–old Russian immigrant, is a musician and has played the accordion since he was a teenager. Saakian performs professionally on a limited basis, but claims he never experienced any problems with his arms, hands, or wrists as a result of playing music.

[¶ 3] Saakian was examined on July 2, 1996, by an emergency room physician who diagnosed him with bilateral tendinitis or "tennis elbow." The physician placed Saaki-

an on anti-inflammatories with physical therapy and also ordered that he be taken off work for a period of one week. The physician noted "this is a work related process. We will have Dr. [Joseph] Carlson follow up in one week to check on his progress and determine whether or not this job is something that he can continue on in."

[¶ 4] On July 10, 1996, Saakian filed an application for Workers Compensation benefits, claiming he sustained an overuse injury to his forearms while performing his job duties at work. Taxi 9000 objected to the claim, alleging Saakian had suffered no injury, or if he had, it was not work related.

[¶ 5] Dr. Carlson, an orthopaedic surgeon who later examined Saakian, reported he "does not necessarily have to be placed on any sort of restrictions," but noted Saakian's discomfort while working "could be relieved with taking frequent breaks, applying ice to this area and taking nonsteroidal medication." After being questioned by the Bureau, Dr. Carlson said "I feel his pain may indeed be related to over use or repetitive type of activity. This may indeed be a combination of playing keyboard and accordion coupling this with his current work situation."

[¶ 6] In November 1996, the Bureau dismissed Saakian's claim, concluding he had not proven a compensable injury entitling him to benefits. Saakian requested an administrative hearing. Following the hearing, the Administrative Law Judge (ALJ) recommended reversal of the Bureau's dismissal. The ALJ concluded Saakian had proven a compensable injury entitling him to benefits because Saakian's treating physicians related his tennis elbow condition to his work at Taxi 9000. The ALJ found "none of the factual information previously identified revealed that the claimant had been engaged in any significant activities as a musician that may have contributed to cause his bilateral arm pain."

[¶ 7] The Bureau followed the ALJ's recommendation and awarded Saakian medical expense benefits. However, the Bureau amended the decision by concluding Saakian was not entitled to disability benefits:

Saakian testified he left his employment at Taxi 9000 in September 1996, and has not been employed or worked since September 1996. Saakian agreed no doctor advised him he could not perform his job at Taxi 9000. In July 1996, and again in August 1996, Dr. Carlson released Saakian to his job at Taxi 9000 without restrictions. Dr. Carlson did advise that Saakian should take work breaks, apply ice, and take nonsteroidal medication. Therefore, when the Bureau dismissed Saakian's claim on November 12, 1996, Saakian was not disabled from performing his job at Taxi 9000 due to the work injury.

Saakian appealed to district court, which affirmed the Bureau's decision.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–15, and 65–10–01. Saakian's appeal was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–21.

## II

[¶ 9] On appeal, we review the Bureau's decision, not the district court's decision. *Hopfauf v. North Dakota Workers Comp. Bureau*, 1998 ND 40, ¶ 8, 575 N.W.2d 436. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing. *Sprunk v. North Dakota Workers Comp. Bureau*, 1998 ND 93, ¶ 4, 576 N.W.2d 861. Our review of the Bureau's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Loberg v. North Dakota Workers Comp. Bureau*, 1998 ND 64, ¶ 5, 575 N.W.2d 221.

## A

[¶ 10] Saakian asserts he had inadequate notice his entitlement to disability benefits would be an issue during the administrative hearing because the only issue listed by the ALJ in the specification of issues was "whether claimant sustained a compensable injury."

[¶ 11] Due process requires a participant in an administrative proceeding be given notice of the general nature of the questions to be heard, and an opportunity to prepare and to be heard on those questions. *Hentz Truck Line, Inc. v. Elkin,* 294 N.W.2d 774, 780 (N.D.1980). Notice is adequate if it apprises the party of the nature of the proceedings so there is no unfair surprise. *Erovick v. Job Service North Dakota,* 409 N.W.2d 629, 631 (N.D.1987). These due process principles are embodied in N.D.C.C. § 28–32–05(3)(c), which requires a written specification of issues before an administrative hearing on a workers compensation claim:

> A hearing under this subsection may not be held unless the parties have been properly served with a copy of the notice of hearing as well as a written specification of issues for hearing or other document indicating the issues to be considered and determined at the hearing. In lieu of, or in addition to, a specification of issues or other document, an explanation about the nature of the hearing and the issues to be considered and determined at the hearing may be contained in the notice.

Basic notions of fundamental fairness dictate a person challenging an agency action must be adequately informed in advance of the questions to be addressed at the hearing so the person can be prepared to present evidence and arguments on those questions. *Estate of Robertson v. Cass County,* 492 N.W.2d 599, 602 (N.D.1992).

[¶ 12] Saakian relies on *Flink v. North Dakota Workers Comp. Bureau,* 1998 ND 11, 574 N.W.2d 784, to support his argument inadequate notice was given in this case. In *Flink,* we held the Bureau had not provided the claimant with proper notice of the reason for discontinuing his disability benefits when it advised the claimant through a form he was no longer eligible for those benefits because he had transferable skills to return to work. After an administrative hearing, the ALJ recommended terminating the claimant's benefits, not because he had transferable skills, but because the claimant had been released to return to work. We concluded the Bureau, through the ALJ, had "blindsided" the claimant by not identifying the release-to-work issue in the discontinuation of benefits notice, which "indicated being released to work was not at issue." *Flink,* 1998 ND 11, ¶ 16, 574 N.W.2d 784. We questioned whether the Bureau even anticipated the release-to-work issue would be dispositive, because there was no testimony during the administrative hearing regarding the date the claimant was released to return to work and the Bureau's attorney asked no questions about the subject. *Flink,* 1998 ND 11, ¶¶ 16, 17, 574 N.W.2d 784.

[¶ 13] The circumstances in this case are vastly different from the situation in *Flink.* Here, Saakian had filled out information requested by the Bureau for a disability claim on the original claim form, and the Bureau had given the claim a time loss claim designation in its caption. Saakian and his attorney were well aware of the type of benefits Saakian sought from the Bureau. During the hearing, questions were asked and testimony and evidence were presented by both parties regarding Saakian's disability status. Questions focused on Saakian's ability to perform his work at Taxi 9000. A physician's report of injury and letter indicated Saakian could perform his work at Taxi 9000 without restrictions. Saakian's attorney and the Bureau's attorney asked Saakian questions regarding his job duties at Taxi 9000 and his ability to perform them. Saakian even admits the Bureau's order denying him disability benefits was "based on evidence which was not only available but was admitted during the formal administrative hearing." Even though the specification of issues could have been more precise, Saakian was not, under these circumstances, unfairly surprised, and he had an opportunity to, and did, address the Bureau's evidence on the disability question. Saakian was not prejudiced by the

specification of issues for this administrative hearing.

[¶ 14] Furthermore, our case law on administrative res judicata suggests the Bureau would have been precluded from deciding Saakian's request for disability benefits in another formal adjudicative hearing because evidence was presented and the issue was raised in the administrative hearing leading to the Bureau's final order. Administrative res judicata precludes the Bureau, in the absence of new evidence or a change in medical condition, from relitigating claims that were raised or could have been raised in a prior formal, trial-type adjudicative hearing. *See, e.g., McCarty v. North Dakota Workers Comp. Bureau*, 1998 ND 9, ¶ 14, 574 N.W.2d 556; *Cridland v. North Dakota Workers Comp. Bureau*, 1997 ND 223, ¶¶ 17, 20–21, 571 N.W.2d 351; *Fischer v. North Dakota Workers Comp. Bureau*, 530 N.W.2d 344, 347 (N.D.1995). We have also incorporated into administrative workers compensation proceedings the N.D.R.Civ.P. 15(b) concept that issues not raised by the pleadings, but tried by the express or implied consent of the parties, are treated as if they had been raised in the pleadings. *See McCarty*, 1998 ND 9, ¶ 17, 574 N.W.2d 556. While our case law on administrative res judicata would not foreclose the ALJ and the parties from reserving for future hearing and decision issues not delineated in the specification of issues but which arise during a formal administrative hearing and are tried by implied consent, neither the ALJ nor the parties did so in this case.

[¶ 15] We conclude any defect in the Bureau's specification of issues was harmless because Saakian had adequate notice entitlement to disability benefits was an issue at the administrative hearing on the compensability of his claim.

### B

[¶ 16] Saakian asserts the *McCarty* and *Cridland* formulation of administrative res judicata should be applied against the Bureau to prevent it from amending the ALJ's decision awarding benefits. Saakian argues because the Bureau's initial order denied his claim entirely, including disability benefits, the disability benefits issue was resolved against the Bureau when the ALJ found Saakian had suffered a compensable injury. Saakian appears to claim either the initial 1996 order denying benefits, from which Saakian requested and received a formal administrative hearing, or the ALJ's recommended order finding he suffered a compensable injury, was res judicata and precluded the Bureau from amending the ALJ's recommended decision. Saakian's reliance on *McCarty* and *Cridland* is misplaced.

[¶ 17] The doctrine of res judicata only prohibits relitigation of a claim or issue resolved by a final decision. *See Fahlsing v. Teters*, 552 N.W.2d 87, 89 (N.D.1996). *McCarty*, 1998 ND 9, ¶ 18, 574 N.W.2d 556, and *Cridland*, 1997 ND 223, ¶ 27, 571 N.W.2d 351, applied administrative res judicata to give preclusive effect only to prior orders entered after formal adjudicative trial-type proceedings. Administrative res judicata does not apply to the initial dismissal of a claim when the claimant requests a hearing because the Bureau is obligated to give a formal evidentiary hearing to a claimant who requests one. *Steele v. North Dakota Workmen's Comp. Bureau*, 273 N.W.2d 692, 701 (N.D.1978). *See also Boger v. North Dakota Workers Comp. Bureau*, 1998 ND 131, ¶ 8, 581 N.W.2d 463. Likewise, the ALJ's recommended decision is not final for res judicata purposes because the Bureau is given authority under N.D.C.C. § 28–32–13(3) to amend or reject an ALJ's recommended findings and conclusions. We therefore conclude administrative res judicata did not preclude the Bureau from amending the ALJ's recommended order.

### C

[¶ 18] Saakian asserts the participation of Jeff R. Bitz, the Bureau's director of claims and rehabilitation, in these proceedings violated N.D.C.C. § 28–32–12.2(1) and denied him due process. Bitz signed the initial November 1996 order denying Saakian benefits and also signed the final November 1997 order amending the ALJ's decision to deny Saakian disability benefits. Saakian asserts Bitz functioned as a "hearing officer"

when he issued the final order and the Bureau's use of Bitz at both ends of the administrative proceedings denied him a fair hearing process.

[¶ 19] Section 28–32–12.2(1), N.D.C.C., forbids a "person who has served as investigator, prosecutor, or advocate in the investigatory or prehearing stage of an adjudicative proceeding" from serving as a hearing officer. In this case, Bitz did not serve as the hearing officer. Rather, after Saakian asked for a rehearing, the Bureau requested the Office of Administrative Hearings to appoint an administrative law judge or hearing officer to preside over the hearing and issue a recommended decision. *See* N.D.C.C. § 54–57–03(2) and (5); *Feist v. North Dakota Workers Comp. Bureau,* 1997 ND 177, ¶ 9, 569 N.W.2d 1; *Blanchard v. North Dakota Workers Comp. Bureau,* 1997 ND 118, ¶ 13, 565 N.W.2d 485. An administrative law judge was appointed to preside at the hearing, and Bitz did not serve as the hearing officer. *See* N.D.C.C. § 28–32–01(5).

[¶ 20] Bitz was authorized by N.D.C.C. § 65–02–12 to issue the Bureau's initial November 1996 decision denying Saakian all benefits.[1] After receiving the ALJ's recommended decision, the Bureau, through Bitz, accepted, but amended, that decision. Section 28–32–13(3), N.D.C.C., specifically allowed the Bureau to "amend[ ] or reject[ ]" the ALJ's recommended decision. Bitz's adoption and amendment of the ALJ's recommended decision does not transform him into a "hearing officer" for purposes of N.D.C.C. § 28–32–12.2(1). *See Gale v. North Dakota Board of Podiatric Medicine,* 1997 ND 83, ¶ 27, 562 N.W.2d 878. The procedure used here did not violate N.D.C.C. § 28–32–12.2(1).

[¶ 21] Saakian's claim of a due process violation is equally unavailing. This Court has long held a claimant is not denied a fair hearing merely because the Bureau as an administrative agency performs all three functions of investigation, prosecution, and adjudication. *See, e.g., S & S Landscaping v. North Dakota Workers' Comp. Bureau,*

541 N.W.2d 80, 82 (N.D.1995). The procedure used in this case did not deny Saakian due process.

### D

[¶ 22] Saakian asserts the evidence in the record establishes he was disabled, contrary to the finding of the Bureau.

[¶ 23] "Disability" is defined in N.D.C.C. § 65–01–02(13) (1995) as "loss of earnings capacity and may be permanent total, temporary total, or partial." A "total disability" exists when a worker is unable, solely because of a job-related injury, to perform or obtain any substantial amount of labor in that particular line of work, or in any other for which the worker would be fitted. *See Wendt v. North Dakota Workers Comp. Bureau,* 467 N.W.2d 720, 725 (N.D.1991). A worker who is medically able to return to work is not totally disabled. *See Claim of Olson,* 419 N.W.2d 894, 897 (N.D.1988). To establish a "partial disability," there should be a physical disability, the employee should be able to work subject to the disability, and there should be an actual loss of earning capacity that is causally related to the disability. *See Risch v. North Dakota Workers Comp. Bureau,* 447 N.W.2d 308, 309 (N.D. 1989).

[¶ 24] In this case, Dr. Carlson reported in July and August 1996 Saakian could perform his job at Taxi 9000 without restrictions. Saakian testified he left his employment at Taxi 9000 in September 1996 and has not worked since then. No doctor advised Saakian he could not perform his work at Taxi 9000. Saakian's employer at Taxi 9000 testified even though Saakian had no work restrictions, he continued to complain about his arms hurting, and eventually "he never came back."

[¶ 25] A physician who began treating Saakian after he left Taxi 9000 advised him to look for work and try to avoid jobs where he would be doing a lot with his arms. But Saakian testified he had not been working anywhere since September 1996 and added

---

1. Saakian does not argue Bitz was not authorized by the Bureau's director to issue orders on behalf of the Bureau. *See* N.D.C.C. § 28–32–13.

"I have too many applications for all around Bismarck and I have right now—maybe I will go this weekend because I want to find some job, a light job." The evidence establishes that any loss of earning capacity experienced by Saakian after he left Taxi 9000 was not caused by the work injury.

[¶ 26] We conclude a reasoning mind reasonably could have found the weight of the evidence from the entire record established Saakian was not disabled when the Bureau initially dismissed his claim in November 1996.[2]

### III

[¶ 27] The judgment is affirmed.

[¶ 28] VANDE WALLE, C.J., NEUMANN and MARING, JJ., concur.

[¶ 29] The Honorable HERBERT L. MESCHKE, a member of the Court when this case was heard, retired effective October 1, 1998, and did not participate in this decision.

[¶ 30] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

---

**2.** Contrary to Saakian's argument, the Bureau was not required to obtain an updated medical report addressing disability under N.D.C.C. § 65–05–08.1 (1995) and this Court's decision in *Frohlich v. North Dakota Workers Comp. Bureau,* 556 N.W.2d 297, 302 (N.D.1996). No updated report was necessary because the Bureau did not terminate ongoing disability benefits Saakian was receiving in this case. *See Lindell v. North Dakota Workers Comp. Bureau,* 1998 ND 174, ¶ 14, 584 N.W.2d 520 (holding subdivisions a through d of N.D.C.C. § 65–05–08.1(2) (1995) apply to a claimant's initial request for disability benefits; subsections 5 and 6 do not).