1999 ND 129

**Ted UNSER, Claimant, Appellant and Cross-Appellee**

v.

**The NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee and Cross-Appellant,**

and

**Westcon, Inc., Respondent**

**No. 990031.**

Supreme Court of North Dakota.

July 13, 1999.

Rehearing Denied July 29, 1999.

---

Stephen D. Little, Dietz, Little & Haas, Bismarck, for claimant, appellant and cross-appellee.

Lawrence E. King, Special Assistant Attorney General, Bismarck, for appellee and cross-appellant.

MARING, Justice.

[¶ 1] Ted Unser appealed from a district court judgment affirming an order of the Workers Compensation Bureau terminating Unser's disability benefits. The Bureau cross-appealed from that part of the judgment reversing the Bureau's order for

reimbursement of benefits paid. We hold the greater weight of the evidence supports the Bureau's finding Unser intentionally failed to report income material to the determination of Unser's eligibility for disability benefits. We affirm that part of the judgment upholding the Bureau's termination of benefits and reverse that part of the judgment overturning the Bureau's order of reimbursement for benefits paid.

[¶ 2] On August 15, 1990, while working as a carpenter for Westcon, Inc., Unser injured his lower back. Unser filed a claim for workers compensation benefits. The Bureau accepted liability for the injury and awarded benefits, including temporary total disability benefits.

[¶ 3] In 1994, Unser informed the Bureau he wanted to do some light carpentry work. The Bureau encouraged him to do so, providing he followed his doctor's medical advice about the kind and extent of work he could perform. A Bureau employee informed Unser he had to report his earnings to the Bureau, including how much he was paid and for what time period, so the Bureau could monitor Unser's benefit eligibility.[1]

[¶ 4] In 1995 and 1996, the Bureau received anonymous reports Unser was failing to report earnings. The Bureau conducted an investigation and, on December 31, 1996, mailed Unser a pre-termination notice of the Bureau's intent to discontinue Unser's benefit payments. On March 13, 1997 the Bureau issued an order terminating all future disability benefits in connection with Unser's 1990 claim, and requiring Unser to reimburse the Bureau $12,861.71 for benefits previously paid.

[¶ 5] Unser requested a hearing, which was held before an Administrative Law Judge (ALJ) on October 13 and 14, 1997. The ALJ found Unser willfully failed to report earnings from April through October 1996 and during that period made false statements to the Bureau that he was not working and not receiving income. The ALJ concluded Unser failed to report income and made intentional false statements that he was not working, which constituted violations of N.D.C.C. § 65–05–33. The ALJ recommended the Bureau forfeit Unser's future disability benefits. The ALJ also found, however, the greater weight of the evidence did not establish the Bureau paid benefits to Unser based upon his false statements or his failure to report income, and recommended the Bureau not seek reimbursement of benefits paid.

[¶ 6] In its final order, dated April 21, 1998 and issued by the Bureau's Director of Claims and Rehabilitation, Jeff R. Bitz, the Bureau adopted the ALJ's findings and his recommendation, except the Bureau rejected the finding Unser's false statements and failure to report income had not resulted in the Bureau making erroneous benefit payments to Unser. The Bureau's order terminated Unser's disability benefits and ordered him to reimburse the benefits erroneously paid.

I

[¶ 7] Unser asserts the Bureau's pre-termination notice was inadequate and violated his due process rights. Due process requires the Bureau to give a claimant prior notice of the Bureau's intent to terminate disability benefits and an opportunity to respond. *Beckler v. N.D. Workers Comp. Bur.*, 418 N.W.2d 770, 773 (N.D. 1988). Due process is afforded if the claimant is given an opportunity to provide a written response as an initial check against an erroneous decision followed by a timely post-termination evidentiary hearing. *Id.* at 775. The pre-termination notice must include "a statement of the reason for the action, [and] a brief summary of the evidence relied upon by the bu-

---

1. During the relevant time, N.D.C.C. § 65–05–10(3), permitted a claimant to earn up to ten percent of the claimant's average gross weekly earnings with no reduction in total disability benefits. The provision was amended in 1997. *See* 1997 N.D. Sess. Laws ch. 542, § 5.

reau...." N.D.C.C. § 65–05–08.1(6) (1993); *Flink v. N.D. Workers Comp. Bur.*, 1998 ND 11, ¶ 15, 574 N.W.2d 784. The Bureau's pre-termination notice informed Unser his disability benefits were going to be terminated because "[r]ecent information received by the Bureau indicates that you have been working during the same time that you claimed to be totally disabled from work."

[¶ 8] Unser's counsel did not raise this issue, in his petition for rehearing. From the time of the pre-termination notice through the time of the administrative hearing, Unser never claimed the pre-termination notice was inadequate or that he was misled or without knowledge of the Bureau's reasons for terminating his benefits resulting in his inability to respond. We conclude Unser did not timely present this issue, and we further conclude Unser has failed to demonstrate specifically in what respects the pre-termination notice was inadequate.

## II

■ [¶ 9] Unser's counsel asserts "[t]he Bureau's use of Director of Claims and Rehabilitation Jeff R. Bitz as a hearing officer deprived Mr. Unser of procedural due process." This identical issue was raised and rejected by this Court in *Saakian*, 1998 ND 227, ¶¶ 19–21, 587 N.W.2d 166 (1998):

> Section 28–32–12.2(1), N.D.C.C., forbids a "person who has served as investigator, prosecutor, or advocate in the investigatory or prehearing stage of an adjudicative proceeding" from serving as a hearing officer....
>
> Bitz was authorized by N.D.C.C. § 65–02–12 to issue the Bureau's initial November 1996 decision denying Saakian all benefits. After receiving the ALJ's recommended decision, the Bureau, through Bitz, accepted, but amended, that decision.... Bitz's adoption and amendment of the ALJ's recommended decision does not transform him

into a "hearing officer" for purposes of N.D.C.C. § 28–32–12.2(1)....

> .... The procedure used in this case did not deny Saakian due process.

[¶ 10] Bitz issued the initial order terminating Unser's benefits. The subsequent hearing was conducted by an administrative law judge who thereafter submitted recommended findings of fact, conclusions of law, and an order. Bitz adopted, with amendments, the ALJ's findings and conclusions of law and issued the Bureau's final order. We conclude the procedure did not violate Unser's due process rights.

## III

■ [¶ 11] Unser asserts the Bureau's "use of Ted Unser's criminal judgment and consequent imposition of a penalty under N.D.C.C. § 65–05–33 constitutes double jeopardy."

[¶ 12] In his trial brief, Unser raised this issue in very summary fashion. The court, in its memorandum opinion, concluded the issue was not adequately raised:

> Unser argues the Bureau's order directing forfeiture of benefits and recoupment constitutes double jeopardy since he was punished in district court for the crime of Making a False Statement. In essence, Unser's argument is an attack on the constitutionality of N.D.C.C. § 65–05–33.
>
> ....
>
> To sustain his argument, Unser must show that Section 65–05–33 was enacted as a punitive measure as opposed to one which has a remedial goal. *State v. Zimmerman*, 539 N.W.2d 49, 56 (N.D. 1995). Unser has not even attempted to make such a showing. Our state supreme court has cautioned on numerous occasions that one who attacks the constitutional validity of a statute should bring up the "heavy artillery" or forego the attack entirely. *Swenson v. Northern Crop Insurance, Inc.*, 498 N.W.2d 174, 178 (N.D.1993).

[¶ 13] This argument fails.

[¶ 14] It is well established double jeopardy protects against successive prosecutions and punishments for the same criminal offense. *State v. O'Rourke*, 544 N.W.2d 384, 386 (N.D.1996). A remedial administrative sanction, as opposed to a punitive one, does not constitute a basis for a double jeopardy claim. *State v. Zimmerman*, 539 N.W.2d 49, 56 (N.D.1995). Unser's attorney made no attempt before the trial court to establish the basis for the double jeopardy claim. He provided no analysis or authority on the issue of punitive versus remedial sanctions. One must do more than submit bare assertions to adequately raise a constitutional issue. *See Swenson v. Northern Crop Ins., Inc.*, 498 N.W.2d 174, 178 (N.D.1993). We conclude Unser's counsel failed to sufficiently raise this constitutional attack. An issue not properly raised before the trial court cannot be brought for the first time on appeal. *Cermak v. Cermak*, 1997 ND 187, ¶ 15, 569 N.W.2d 280. We, therefore, do not reach the merits of Unser's double jeopardy claim.

IV

[¶ 15] Unser argues the Bureau failed to prove he intentionally defrauded the Bureau. On appeal, we review the Bureau's decision, not the district court's decision. *Saakian*, 1998 ND 227, ¶ 9, 587 N.W.2d 166. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprive the appellant of a fair hearing. *Sprunk v. N.D. Workers Comp. Bur.*, 1998 ND 93, ¶ 4, 576 N.W.2d 861. Our review of the Bureau's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Loberg v. N.D. Workers Comp. Bur.*, 1998 ND 64, ¶ 5, 575 N.W.2d 221.

[¶ 16] The Bureau found Unser violated N.D.C.C. § 65–05–33,[2] which, at the time of the alleged violations, provided:

*65–05–33. Filing false claim or false statements—Penalty.* Any person claiming benefits or payment for services under this title, who willfully files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor, but if the act is committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or services, the offense is a class C felony. Provided further that:

. . . .

2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any additional benefits relative to that injury.

[¶ 17] In its final order, the Bureau specifically found Unser intentionally failed to report his income, which prevented the Bureau from calculating his eligibility for disability benefits. Unser concedes he failed to report earnings from carpentry jobs, but he asserts the income did not exceed ten percent of his pre-injury earnings so he did not believe he had to report it or that failure to report his earnings was material. From past dealings with the Bureau on this claim, Unser was well aware he was required to report all earnings from outside sources so the Bureau

---

**2.** This statute was amended in 1997. *See* 1997 N.D. Sess. Laws ch. 534, § 4.

could track his entitlement to disability benefits. He was specifically told by the Bureau in 1994, when he began doing light carpentry work, that he must report his earnings to the Bureau. Nevertheless, Unser ignored these clear instructions and intentionally failed to report earnings. We conclude a reasoning mind could have found by a preponderance of the evidence Unser "willfully failed to report the receipt of income from employment" in violation of N.D.C.C. § 65–05–33.

[¶ 18] To trigger the statutory consequences under N.D.C.C. § 65–05–33, a false statement must be intentional and material. *F.O.E. Aerie 2337 v. N.D. Workers Comp. Bur.*, 464 N.W.2d 197, 201 (N.D.1990). A failure to report income is, by the very nature of the violation, material to the Bureau's ability to determine a claimant's entitlement to benefits and to calculate the amount of benefits. By failing to report income a claimant impedes the Bureau's process of determining eligibility. The Bureau's finding that Unser intentionally failed to report income supports its conclusion Unser's violation was material and justifies forfeiture under N.D.C.C. § 65–05–33(2) of future disability benefits connected to the 1990 claim.

V

[¶ 19] The Bureau additionally found "Unser's failure to report his income (preventing the Bureau from calculating eligibility for disability) and nondisclosure of his physical ability to perform the work" caused the Bureau to erroneously pay him benefits of $12,861.71. The Bureau ordered Unser to reimburse those benefits, but the district court reversed that part of the order. The Bureau cross-appealed on this issue.

[¶ 20] N.D.C.C. § 65–05–33(2) states a person claiming benefits in violation of this statute "shall reimburse the bureau for any benefits paid based upon the false claim or false statement." When a claimant fails to report income to the Bureau, the violation frustrates the Bureau's at-

tempt to demonstrate materiality. It may be difficult, if not impossible, for the Bureau to discover or unearth a claimant's prior earnings which the claimant has intentionally concealed from the Bureau. Here, the task is especially onerous, because much of Unser's unreported earnings were from numerous carpentry jobs for which Unser was often paid in cash.

[¶ 21] There is evidence Unser earned about $395 from one carpentry job and about $600 from another. One person who hired Unser to do carpentry work testified he paid Unser mostly in cash in an amount "somewhere around four grand." The record evidence shows Unser worked on several carpentry jobs for which he received cash payments. The record evidence also indicates Unser kept very poor records of the income he received and of the time periods the work occurred.

[¶ 22] Under these circumstances, the Bureau, while being able to prove Unser failed to report income, is hindered from establishing the exact amount of undisclosed income. A claimant has the burden of proving the right to receive workers compensation benefits. *Flink v. N.D. Workers Comp. Bur.*, 1998 ND 11, ¶ 9, 574 N.W.2d 784. When the Bureau terminates benefits after accepting a claim, the claimant has the burden of proving the right to continued benefits. *Id.* When the claimant's wrongful concealment of income impedes the Bureau's proof of materiality of the nondisclosure for reimbursement purposes, fairness dictates the claimant, not the Bureau, suffer the consequences.

[¶ 23] We conclude the record evidence supports the Bureau's finding Unser's intentional failure to report income resulted in erroneous payment of benefits to him. We further conclude the Bureau's findings support its conclusion Unser is obligated under N.D.C.C. § 65–03–33(2) to reimburse the Bureau for benefits paid in the amount of $12,861.71.

[¶ 24] We affirm that part of the judgment upholding the Bureau's termination of Unser's disability benefits and we reverse that part of the judgment overturning the Bureau's order of reimbursement.

[¶ 25] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and KAPSNER, JJ., concur.